# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, K.J. BRUBAKER, M.C. HOLIFIELD**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## AMBER N. BASARES
### SERGEANT (E-5), U.S. MARINE CORPS

### NMCCA 201400278
### SPECIAL COURT-MARTIAL

**Sentence Adjudged:** 26 March 2014.
**Military Judge:** LtCol E.A. Harvey, USMC.
**Convening Authority:** Commanding Officer, Wounded Warrior Battalion (West), Wounded Warrior Regiment, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** Maj T.H. Campbell, USMC.
**For Appellant:** CAPT Tierney M. Carlos, JAGC, USN; Capt Michael Magee, USMC.
**For Appellee:** LT Jetti Gibson, JAGC, USN; Capt Cory A. Carver, USMC.

### 11 August 2015

---------------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A special court-martial consisting of members with enlisted representation convicted the appellant, contrary to her pleas, of two specifications of submitting a false official record, one specification of making a false official statement, one specification of bribery, and two specifications of

solicitation, in violation of Articles 107 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 934. The members sentenced the appellant to a bad-conduct discharge and a reduction to the lowest enlisted pay grade. The convening authority (CA) approved the sentence as adjudged and, except for the punitive discharge, ordered the sentence executed.

The appellant now alleges two assignments of error (AOE): (1) that she was denied effective assistance of counsel as guaranteed by the Sixth Amendment; and, (2) that the military judge abused her discretion by allowing the members to consider evidence during the sentencing phase of the trial which should have been excluded.

After reviewing the record of trial and the pleadings of the parties, we determine the findings and approved sentence to be correct in law and fact. We also find that no errors materially prejudicial to the substantial rights of the appellant occurred. Arts. 59 (a) and 66(c), UCMJ.

## Factual Summary

On 5 June 2013, the appellant, a sergeant (Sgt) in the Marine Corps, turned in her physical fitness test (PFT) results which indicated that Staff Sergeant (SSgt) Abner administered the test to her. When SSgt Roman and First Sergeant (1stSgt) Dempsey reviewed the document, SSgt Roman noted that the handwriting was not that of SSgt Abner and that SSgt Abner was also on leave on the date listed on the document. After confirming that SSgt Abner had not administered the PFT to the appellant, 1stSgt Dempsey called her into his office to ask about the apparent discrepancies in the report. The appellant responded that it was actually Sgt K who ran the PFT for her and that he forgot to substitute his name for that of Sgt Abner on the PFT report. The appellant was not informed of her Article 31(b) rights during this meeting.

Following the meeting, the appellant contacted Sgt K and asked to meet him at a nearby grocery store to discuss an undisclosed matter. When they met, the appellant offered Sgt K $100.00 to tell 1stSgt Dempsey that he administered the PFT to her. Sgt K refused to assist the appellant, and told her that he would consider her request a momentary lapse in judgment, rather than report her up the chain of command.[1]

---

[1] Record at 107.

2

The appellant then asked a friend, Sgt Jasso, to call 1stSgt Dempsey and pretend to be Sgt K. Sgt Jasso made the call and, pretending to be Sgt K, told 1stSgt Dempsey that he ran the test for the appellant. Unbeknownst to the appellant and Sgt Jasso, SSgt Roman had already emailed Sgt K to inquire into the appellant's PFT. Sergeant K later replied via email that he had not run the test.[2] Confused by the email response, 1stSgt Dempsey called Sgt K into his office and read him his Article 31(b) rights before questioning him. Sgt K confirmed that he did not run the PFT for the appellant and that he had not called stating otherwise.[3]

The appellant was then called in a second time by 1stSgt Dempsey and this time was read her Article 31(b) rights. After waiving her rights, the appellant maintained that Sgt K ran her PFT, and added that Sgt K refused to submit the results unless she had sex with him. In September 2013, she filed an Inspector General (IG) complaint, asserting misconduct by six Marines, three of whom were scheduled to testify against her: 1stSgt Dempsey, SSgt Abner, and SSgt Sanchez. The appellant was ultimately found guilty of all charges and specifications.

During the presentencing hearing, without objection by the defense, the trial counsel offered evidence of the appellant's false accusation that Sgt K had demanded sex from her before he would submit her PFT results. At the behest of the trial counsel, over objection by the defense, the military judge took judicial notice of the definition and maximum punishment of attempted sexual assault in aggravation to show the reckless nature of her accusation. The trial counsel referenced the accusation in his sentencing argument without objection by the defense.[4]

Additional facts necessary to resolve the assigned errors are included herein.

## Ineffective Assistance of Counsel

The appellant's first AOE alleges three bases for her claim of ineffective assistance of counsel:

(1) failure to make a motion to suppress the statement she made to 1stSgt Dempsey when she was questioned

---

[2] *Id.* at 129.

[3] *Id.* at 109.

[4] *Id.* at 232-34.

about the signature on the PFT report without having received an Article 31(b) rights advisement;

(2) failure to elicit testimony from a defense witness to discredit the testimony of a key Government witness; and,

(3) failure to cross-examine witnesses on their bias against her.

The appellant asserts that the combination of these errors was prejudicial in that they deprived her of her Sixth Amendment right to effective assistance of counsel. We disagree. We do not find that the allegations amount to ineffective assistance of counsel, or that the appellant's case was materially prejudiced.

We review "the questions of deficient performance and prejudice *de novo*." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citations omitted); *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (finding that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."). In order to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

Counsel are presumed to be competent, and therefore, our inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also United States v. Cronic*, 466 U.S. 648, 658 (1984). Generally, strategic or tactical decisions made by a trial defense counsel will only be challenged on appeal if the appellant shows specific defects in counsel's performance that were unreasonable under prevailing professional norms. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009). The appellant has the burden of establishing a factual foundation of ineffective representation,

4

which requires a specific statement of the errors or deficient performance supported by evidence and facts; bare allegations based on speculation, conjecture, and conclusory comments will not suffice. *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000); *see also United States v. Jones*, 39 M.J. 815, 818 (A.C.M.R. 1994).

In examining the effectiveness of counsel's assistance, we review counsel's performance applying the following test: (1) is there a reasonable explanation for counsel's actions; (2) did counsel's level of advocacy fell measurably below the ordinary standard of competence; and, (3) is there is a reasonable probability that absent the errors, the outcome would have differed. *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)

Failure to File Motion to Suppress

The appellant alleges multiple instances of conduct or omissions that undermined her right to effective assistance of counsel and thereby, prejudiced her case. She begins by asserting that the trial defense counsel should have made a motion to suppress her statement to 1stSgt Dempsey alleging that Sgt K ran her PFT on the grounds that it was inadmissible because 1stSgt Dempsey did not advise her of her Article 31(b) rights before asking her questions about the PFT form.

In the case where the deficiency alleged is a failure to raise a motion, we first evaluate the likelihood of that motion's success before moving on to the question of impact on the trial. In this case, the appellant has failed to show a reasonable likelihood of success in prevailing on a motion to suppress her statement and we therefore find that she has not met her burden or demonstrated prejudice. *See United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001).

The Court of Appeals for the Armed Forces has declared that Article 31(b) warnings are only required when (1) the person being interrogated is a suspect at the time of questioning, and (2) the person conducting the questioning is participating or could reasonably be considered to be participating in an official law enforcement or disciplinary investigation or inquiry. *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000); *see also United States v. Jones,* 73 M.J 357, 361 (C.A.A.F. 2014). Any questioning of a suspect by a military superior in his or her chain of command will create a "strong presumption" that the questioning was for disciplinary purposes." *Swift*, 53 M.J. at 448 (citing *United States v. Good*, 32 M.J. 105, 108 (C.M.A. 1991)). To evaluate the merit of a

5

motion to suppress, we examine all the facts and circumstances at the time of the questioning.  These questions we determine *de novo*.  *Jones,* 73 M.J. at 361.

In the case *sub judice*, 1stSgt Dempsey, while reconciling the PFT reports, became aware of a discrepancy on the appellant's PFT report as it was prepared by someone other than Sgt Abner.  In an attempt to reconcile this discrepancy, 1stSgt Dempsey questioned the appellant as to who administered her PFT. 1stSgt Dempsey testified that when he questioned the appellant about her PFT report he did not suspect her of forging the document and went on to say that he had no reason to question her integrity at the time.[5]  Based upon the facts on this record, we find that at the time the appellant was questioned regarding her June 2013 PFT report she was not suspected of an offense and therefore no Article 31(b) warnings were required.

We additionally find that the record does not support the appellant's contention that 1stSgt Dempsey was, or could reasonably be considered to be, acting in a disciplinary capacity when he questioned the appellant concerning the June 2013 PFT report.  Although he was the First Sergeant of the unit and was therefore in a superior position to the appellant, the record suggests that he was acting in an administrative capacity and was merely attempting to rectify a discrepancy he noticed on the appellant's PFT form.[6]  Since 1stSgt Dempsey was not acting in a disciplinary or law enforcement capacity, Article 31(b) warnings were not required.

Accordingly, the appellant has not carried her burden of demonstrating that the trial defense counsel's performance was deficient.  Furthermore, even if we were to find otherwise, we find that the appellant has failed to meet her burden to demonstrate prejudice within the meaning of *Strickland*.

Failure to Discredit Sgt K

We find the appellant's next contention likewise to be without merit.  During the trial, the military judge instructed the trial defense counsel not to discuss the previous sexual harassment claim raised by a different female Marine against Sgt K during trial as such was inadmissible under the rules of evidence.[7]  Accordingly, the trial defense counsel complied with

---

[5] Record at 125.

[6] *Id.*

[7] *Id.* at 114-15.

the military judge's order. Trial defense counsel's alleged failure to adequately examine the witness on this issue was not a result of incompetence or neglect, but a matter of complying with the judge's direction. We find no error here by the trial defense counsel. Furthermore, the appellant did not show how counsel's inaction in this area prejudiced her. The appellant fails both prongs of the *Strickland* test, and therefore, we find no ineffective assistance of counsel regarding the second allegation.[8]

Failure to Cross-Examine Witnesses Based Upon Bias

Finally, the appellant alleges error in the trial defense counsel's decision not to cross-examine three Government witnesses regarding purported biases towards the appellant. During the trial, the defense counsel did not cross-examine 1stSgt Dempsey, SSgt Abner, or SSgt Sanchez regarding their possible prejudice against the appellant arising from the IG complaint she had filed against them. The trial defense counsel told the appellant that he did not question one of the witnesses about the IG complaint because he believed that bringing it up was irrelevant to the court-martial.[9] Given the nature of the charges and facts of the case, it was tactically prudent to not raise what would have likely been viewed as a self-serving complaint. It is well-established in case law that courts should not second-guess counselors' strategic decisions, barring plain error. *See Strickland*, 466 U.S. at 681. We do not find the tactical reason to not question these witnesses to be deficient performance or plain error. Accordingly, we find this argument to be without merit.

## Abuse of Discretion

In her second AOE, the appellant alleges an abuse of judicial discretion in the trial judge's decision to admit sentencing evidence without conducting a balancing test in accordance with MILITARY RULE OF EVIDENCE 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). During the presentencing hearing, the military judge took judicial notice of the definition of sexual assault and the maximum punishment of attempted sexual assault; allowed the Government to elicit evidence as to the impact that a sexual assault conviction could have had on Sgt Koenig; allowed the Government to argue that the appellant falsely

---

[8] Although the appellant does not challenge the military judge's ruling, we find that it was not an abuse of discretion.

[9] Defense Brief of 21 Nov 2014, Appendix 1 at 2.

accused Sgt Koenig of sexual assault; and, instructed the members that they should consider this evidence in sentencing.

The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013); *see also United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010). If the court finds the military judge abused his discretion, it then reviews the prejudicial effect of the ruling *de novo*. *White*, 69 M.J. at 239.

When a military judge conducts a proper balancing test under MIL. R. EVID. 403, the evidentiary ruling will not be overturned unless there is a clear abuse of discretion. *Solomon*, 72 M.J. at 180. Military judges receive less deference if "they fail to articulate their balancing analysis on the record." *See United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (quoting *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

Assuming without deciding that the military judge erred, we do not find that the appellant has adequately demonstrated that any error prejudiced her case. The maximum allowable punishment faced by the appellant was the jurisdictional limit of a special court-martial. The Government asked the members for a sentence of sixty days' confinement, a bad-conduct discharge, and a reduction from E-5 to E-1. The appellant received a bad-conduct discharge and a reduction from E-5 to E-1; she was not sentenced to confinement. Considering that the appellant was found guilty of both charges and all six specifications, and adjudged a sentence that differed substantially and favorably from both the maximum possible punishment and that asked by the Government, we find that any error that may have occurred was harmless and did not prejudice the outcome. Art. 59(a), UCMJ.

## Conclusion

The findings of guilty and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

8